resumes this session. Please be seated. All right, we'll proceed to hear argument in the next case on calendar for argument this morning, which is 24-7774, Melinda Rex v. Ty Falwell, and we will hear first from Mr. Silvey. Thank you, Your Honor. My name is Greg Silvey. I represent Mindy Rex, and may it please the Court. I'm going to overpower this microphone with my voice if I'm not careful. May it please the Court. We have a lot going on in this case. We have a procedural summary judgment issue, we have a substantive summary judgment issue, and we have an implied contract issue. So court's choice to where I start. It's your argument. You may proceed. Okay, I'll start at the beginning. I'll start with the procedural issue. So this case should stand for the proposition that if the defendant is going to move for summary judgment on an issue, they should actually recite the elements and apply the law to the elements. And Clayton did not do this in this case. May I jump, you counsel, to where we are now? We can affirm for any basis supported in the record. Our review of summary judgment is de novo, and you all in this appellate briefing have briefed the issue. So why shouldn't we just look at it de novo and perhaps affirm because it's supported by the record? Well, the reason I would like to give is because that's worse for me. Appreciate your candor. I mean, would you have put additional facts into the summary judgment record if you had been given formal notice that the claim was at issue in the distinct way you pleaded it? Well, that's the exact problem here is the way, you know, the way cases, civil cases evolve is a complaint is notice pleading. You say some things, and then there's some discovery, and then there's motion practice. And in the case of motion practice, the defendant brings a motion for summary judgment and says no, and you say yes, and you develop these facts. And then a judge makes a ruling, and then on appeal, you take that judge's ruling and you say blah, blah, blah, blah, blah. And the plaintiff didn't get to do that because Clayton did not challenge the cancellation part of this case. And so we have, you know, on appeal, I have the defendant saying, well, you know, we didn't do this. The court didn't do this. You didn't say this. You're saying this first on appeal, and that's because of the procedural problem of how this came up. So I guess that's the answer of why you just shouldn't jump to the merits. And beside the fact that I prefer it, that we should, you know, take things in turn. But would the factual record change? I mean, you're asking for a remand so that, you know, the separate issue can be done under the standard of the Morris case. But would the factual record change if it were remanded? Would it look different from what we see now? Well, I guess it's what do you see now? You know, so we have, okay, so certainly we have the, you know, canceling a contract, canceling the contract depriving the handicap of housing. And we have the cancellation of the contract. I mean, this is always going to be a circumstantial case. I mean, the defendants were smart enough to not say, and we're canceling this contract because of Mindy and her crazy relatives. So they were that smart, they didn't say that. So what's the protected conduct for purposes of this claim? So the protected conduct is obtaining housing for the handicap. And that's what you enjoy as the handicap. So back to the circumstantial part. So the defendants weren't dumb enough to say we're not, you know, selling to Mindy and your crazy relatives. So when in the causal, so if it is interfering with the right for housing for the handicap, when does Ms. Rex first engage in the protected conduct that is the basis for this claim? As it's all falling apart on February 4th. So, I mean, because the district court analyzed it, you know, in terms of two pieces, but the district court seemed to focus on pieces that preceded the protected conduct, which struck me as confusing. Right. And that's, again, part of this, we never had a defendant arguing this in summary judgment. But back to the, I mean, so Ms. Rex is just, I mean, she's arguing the Fair Housing Act, you know, from the inception of the collapse. You know, in that morning of February 4th. And she's saying, and you're depriving, you know, handicapped people of their fair housing, and I have a fair housing attorney. I mean, she's on it, you know, and that's so all of a sudden bringing that up and they, you know, cancel and continue to cancel and won't reconsider. So, is it really an issue on this claim of whether the refusal to recommence the transaction was, you know, fits within 3617, that that's the conduct that, you know, interferes with the exercise of her rights? Well, I don't think there's any question that the failure to recommence, reinstate does, but also. You argue that that was done on pretextual grounds. Yes, right. But the district court didn't seem to analyze that piece of it. No. And again, it wasn't argued below. So, there's nothing for the plaintiff to respond to below because this argument is never being made by the defendant. So, the plaintiff doesn't have anything to respond to. And so, in oral argument, you know, plaintiff. Sorry about overpowering the mic. So, the plaintiff never has anything to respond to in oral argument. He kind of says a couple sentences about it, and that's it. And I mean, the plaintiff gives fair warning to the defendant. You are not moving for summary judgment on this. And on appeal, they pretend they were, but they're not. Well, you were kind of talking past each other because their motion clearly says they were moving on all counts, but they lumped counts one and two together as if they said the same thing, and you came back and said that you're not moving on the 3617, which is different, and you just sort of were talking past each other. But if I was the defendant, I'd give some reasons why I've included 3617, including perhaps using the elements of the claim. I mean, the complaint said two different things. Had the Morris case been decided at the time of this summary judgment briefing? I'm sorry. I don't know. The . . . Had you been given notice that you maintain you should have received, what would you have done differently in the district court that you're not doing now before us? Wouldn't the arguments and the evidence be the same as what you're presenting on appeal? I guess I wasn't trial counsel. I don't want to make a concession I'm going to regret since I was not trial counsel. Okay, fair enough. But it certainly would have been teed up to the district court, which, you know, which did not rule on what we are talking about here. Was summary judgment motion filed, I assume, after the close of discovery or was it filed while discovery was still open? Do you recall? Again, I'm . . . The district court said it was after the closure. That was one of the reasons the district court gave for reaching it. Exactly. And in the brief, opposing counsel's brief said it was after as well. So, yes, it would have been after. So back to somewhere where I was in the middle of this, back to the certain. It's a circumstantial case. And part of it is while I've started this sentence a few times, while the defendants weren't stupid enough to say, yeah, we're doing it because of Mindy and her crazy relatives that we never want to deal with again, they also weren't smart enough to deny it. I mean, she directly says, you know, you're depriving handicapped people of housing in one of those first emails on February 8th or 4th, and they don't say no, we're not. And she accuses everybody, you know, when she's telling Tom Brenner, the manager, this is what's happening, this is what I'm trying to do. Nobody says, and no, we're not. I mean, if this was a criminal case in a non-custodial interrogation, that prosecutor would be saying, this is huge evidence of intent. That gets to go to the jury. This district judge should not have granted summary judgment on this case. I think I'll save the rest for rebuttal. All right. I have a feeling I'm going to have a lot to say. All right. Thank you, counsel. We'll hear now from Mr. Weber. May it please the court. Daniel Weber for the Epelese Defendant, CMH Homes, Inc., and its two employees. Appellant's briefing and its arguments to this court confirms without a doubt what the district court already correctly held under the exact same factual record before this court now, and that's that there is no evidence of any sort of discriminatory intent on CMH's behalf that is necessary to support a Section 3617 interference claim under the Fair Housing Act. The evidence in this case is undisputed, and it's taken almost entirely from the appellant Mindy Rex's 190-paragraph declaration to the district court with 46 exhibits attached, outlining every discussion she had with any interested party in this case. But, you know, Rule 56 expressly states in the provision on sua sponte motions, it says after giving notice and a reasonable time to respond, the court may grant summary judgment for a non-movement. So, by its terms, it says that the court must give notice and a reasonable opportunity to respond. That was not done here. This was a, wasn't this a flagrant violation of Rule 56F? No, Your Honor. The rule states that notice is required, but the holdings of the Supreme Court in Celotex and this Court's holdings state that notice is only the opportunity to notice that the non-moving party's claims are at issue and that they have the opportunity to develop facts, and that was absolutely present here. How is that present? Because the district court didn't even seem to correctly understand the claim. The district court thought that the complaint had pleaded them as basically parasitic of one another, but that just doesn't seem to be correct with, if you look at the complaint, because the second cause of action in paragraph 132, you know, and I'm going to skip over alternative language and just read the relevant part. Defendants canceled plaintiff's purchase transactions after plaintiff Melinda Rex's statement of her belief that defendant's conduct was a violation of fair housing laws. That allegation is completely independent of whether there was a violation of 3604, and the district court totally missed that. The opening summary judgment motion totally missed that, and the Morris case was decided before this briefing was done, where we had absolutely made clear that you could lose your 3604 and still have a 3617, which is what the majority ended up holding in that case. And so this just seems to have been completely botched by the district court. So I don't understand why we would try and sort this out ourselves rather than just send it back and do it right. Well, Your Honor, respectfully, paragraph 132 also refers back to the reasonable accommodation. Correct, but that's why I said there's two theories as to how it was violated, and I skipped over the other one, which is the parallel one, but it had this other element here which the district court just missed, and we've said that it's legally distinct. So this whole idea that it was the plaintiff's fault, that it was how you pleaded it and so you deserve this sua sponte that I'm giving you, was just wrong. The alternative theory is in the complaint. It's a distinct theory, and the district court missed it. So it's a violation of the rule and a misreading of the complaint. This seems like it needs to go back. Well, Your Honor, we respectfully disagree. The Morris case did hold that the claims can be distinct, but it also held in the same breath as in other cases before this court that a 3617 claim and a 3604 claim are often coextensive and, in fact, can be. And the appellants, importantly, the district court specifically held in its order that it was reasonable to read the complaint the way that the appellees did and move for summary judgment in the way that they did, and the appellants have not disputed that characterization of the Second Amendment complaint. What about the fact that, you know, the district court, on page 26 of its order, when it focuses on the retaliation claim, it focuses on two acts as being, you know, the basis of the retaliation claim, and the first is to require Mindy to choose between paying cash or financing when purchasing the homes rather than accepting her hold-money proposal, and two, terminating the negotiations after Mindy told Tellez to sue, so I'm extremely dissatisfied with that. Both of those actions occurred prior to the protected conduct, so it just makes no sense because conduct that preceded the protected conduct can't be the retaliation. If there's a retaliation claim here, it has to be the refusal to recommence, and that draws in the whole long letter, which suddenly hauls out a lot of alternative grounds that we're hearing for the first time and maybe raises a triable issue of pretext. Now you're bringing up stuff that didn't come up before, and so maybe there is something here. Well, Your Honor, we respectfully disagree on that front as well. The entire case was postured and stems from the first request, which Ms. Rex couched as a reasonable accommodation request, which was to hold money, Clayton Holmes, to hold money and try to move up the delivery of the home, which CMH denied. If it was after all of that behavior, that is when Ms. Rex, who is not in a protected class, that is perfectly undisputed, became very upset. She expressed her extreme dissatisfaction in an email to Clayton Holmes and then had an aggressive phone call with Clayton Holmes' manager. But suppose we agree with you that there's just no triable issue that that was retaliatory, that, you know, they put in the expert, they had really good reasons for not wanting to do this whole money thing, which just created a lot of trouble. No triable issue that that was pretextual. All right, set that aside. Why isn't the recommence issue... Because she ultimately said, I'll do it your way. Give me the cash, just give me the home. And she really wanted to get this back on track. And they actually say in the letter that one of the reasons why they don't want to go forward is because you're engaged in protected conduct. They didn't put it that way, but they refer to the conduct that is the protected conduct. Well, Your Honor, the first request was sort of the linchpin of the case. It's not on appeal under the reasonable accommodation claim. But all of these future issues grow from that initial contact. It was Ms. Rex's reaction to what is now a justified reason for refusing what she characterized as a reasonable accommodation. Everything after that is Ms. Rex asking to undo the termination, which all reverts back to the first conduct, which was the reasonable accommodation, which further denotes why the appellees moved and paired those two claims together. And importantly, Your Honor, in the briefing, the appellants did not uncouple the analysis. They continued down the same road that the appellees moved. They paired the claims together, and in fact, they talked about the two different activities, the hold money, which was denied, and sort of an undoing, the termination, and held that they were both reasonable accommodations. They didn't say anything that would suggest to anyone, most notably the district court, that hold on, coupling those two claims together is not appropriate. They are different claims. They stand on their own. They went down the same path. So they're not raising a Morris claim, in your view? They seem clearly to be doing that. They do that now, Your Honor. But for the very first time, they stated that there was an interference separate and apart from the reasonable accommodation. The very first time where? At oral argument. And under Celotex and Rule 56, that is notice, and it was worth noting that was completely unprompted by the district court. The appellants came out at oral argument and said for the very first time, these are different claims. Here is my basis for the 3617 claim. But they had said in the opposition, we don't read the motion as extending to the 3617 claim because it's different, and they didn't say anything about that claim. It didn't say that latter part, Your Honor. It just, in our judgment, misread the motion for summary judgment as simply not moving. But clearly, the claims were considered together in the motion for summary judgment, as they frequently are as held by this court, and the appellants never clarified that. Why wouldn't the letter create a triable issue of pretext as to retaliation under 3617 with respect to the protected conduct of her invoking her FHA rights? Because there is no evidence that there is a discriminatory motive in any of those reasons. As Your Honor correctly referred to, each one of those reasons set forth in that letter is supported by unrebutted expert testimony from a manufactured home. Well, it is as to the, if she wanted to recommence the transaction based on the whole money idea, but there are other issues here. I mean, it raises this issue about, well, now we've decided the modification, which came out of nowhere, that that's actually a grounds for not recommencing, and they refer to the protected conduct in the letter, our concerns are exacerbated by the fact that you have already threatened legal action against CMH prior to entering into any written contracts. These threats alone aren't reason enough to part ways. I mean, that's admitting that her engaging in the protected conduct is the basis for the decision. So why isn't this just a triable issue of a 3617 violation right there? Well, we don't agree, Your Honor, that the statement about the history with respect to the hold money request and the denial and Ms. Rex's escalation is the protected activity. The protected activity started with the hold money request and then was escalated by Ms. Rex with respect to her response to it. And to answer one of Your Honor's previous questions, this is a very unique type of transaction. But the request for the hold money, I understand they have the accommodation claim, which they abandoned. You know, that was for her convenience financially. It's nothing to do with the disability, which is why we don't have that claim here in front of us. So that's not really the protected conduct. The only thing that is potentially triable as protected conduct is she says, hey, these are bogus, you know, this is... I folded and agreed to your terms, and you're canceling the contract anyway, and this is really going to deprive these two disabled people of their housing. And, you know, if you're going to go forward with that, then, you know, I'm going to talk to my lawyer, and our lawyers are going to need to talk. And then they send a letter that says, you know, because you said that, that alone is enough not to do the transaction. We will retaliate against you for invoking your FHA rights. It's kind of right there in the letter. We do not agree with that, Your Honor. As stated previously, the reasons in the letter are additional reasons. The true reason why negotiations were terminated was because of Ms. Rex's escalation and response to the denial of the hold money request. The reasoning set forth, the additional reasons in the letter were also supported by unrebutted expert testimony as valid and legitimate, and are further evidence that CMH was willing to overlook some of the other difficulties in the transaction. You have to understand, getting into a manufactured housing transaction denotes at least another year of working with the customer. And here, as stated in the original reason, and again in the February 12th letter, this is all the reasons why we have an unsuccessful relationship already. We can't just undo the termination. We are going to have a terrible relationship. You've already expressed your extreme dissatisfaction. Unrebutted expert testimony in this case is when that happens, it is reasonable, and in fact expected, to simply walk away. And again, there's no causal connection, but every fact in this case is CMH did not want to do business with Ms. Rex. There is not one iota of evidence that CMH had any discriminatory motive towards the relatives. It is pure speculation. My colleague said that this is an entirely circumstantial evidence case. We would submit there's no evidence of CMH's intent whatsoever, but this Court holds that circumstantial evidence of pretext must be specific and it must be substantial. That's held in the Bergeen case and in the Brown case. And, Judge Collins, I'm sort of reminded of your partial dissent, partial concurrence in Morris, where you used the word lynchpin, I believe, and there was a letter in that case as well, but there was a whole lot of evidence that a jury could find. And that's a lynchpin, that's a bridge between what we said we were doing and why it's not true. But the fact remains that everything that CMH did was because of Ms. Rex's response, and she already admitted she was extremely dissatisfied. And there is no evidence in the record, and all the evidence states that a reasonable retailer in this situation would simply walk away. And you can't just undo a termination when you already have an extremely dissatisfied customer. My colleague basically asked the court to lay down a bright-line rule that a moving party must recite the elements of every claim, but that is contrary to CELATEX and Rule 56. There's no such rule, and it's important to note that the court granting sua sponte is judged on an abuse of discretion standard. That's the amount of time I have in the court. Thank you, counsel. We'll hear rebuttal now. Hello again. To start where he left off... Actually, you do have to cite the elements. I mean, we all went to law school. We know what claims are. We know how to apply facts to the law. And even in opposing counsels, the entire presentation was just denying that a claim could exist outside of the original reasonable accommodation claim. And the defendant's position is, if that's not right, then nothing can flow to it. But our discussion that we've been having here... I think what he was saying was that even if you get past all of this and you get to whether there's a triable issue of retaliation, his point is that this relationship, by the time she engages in the real protected activity, which is, I'm going to call my lawyer FHA lawyer, the relationship was so obviously poisoned, they were so definitive in terminating this, that it's not triable, that it was pretext. Before they even knew she was going to do that, they wanted nothing to do with her, so it's not triable. What's your response to that? My response to that is, I mean, that's one thing that he argues to the jury. And it needs to go to the jury. Because the other side of that, the circumstantial evidence, is, again, they didn't... That doesn't seem good. The circumstantial evidence is, they didn't deny the direct accusation of depriving handicapped people of housing. The jury gets to consider that. So was it just Mindy that they didn't want anything to do with? Because there's the year warranty and such. Or was it Mindy and her mentally handicapped relatives that they didn't want anything to do with? And then, again, the incredible disingenuineness of the letter and some of the pretexts... I mean, the more that they make things up in that letter also shows that they're trying everything they can to get out of this. Is there any evidence that Tellez de Souza knew that these units or these homes were for handicapped persons? Yes. At the time that she said, you're not a happy customer, go somewhere else. On February 4th. On February 4th, she knows it. Because I know it's in an email on February 4th. So I know she knows it on that day. I mean, because it's not mentioned in the conversation. So Ms. Rex sends something, says, I want to do this. She had been raising this whole idea of wanting to do the whole money. And then Tellez de Souza sends us something, we're going to do it one way or the other, and tell me what you want to do. And then she says, all right, I'll do it your way, but I want you to know I'm really not happy. And then Tellez de Souza just says, we're done. We're done. You're going to be that cranky with me. We are done. And did she know at that point, there's no mention in that whole discussion of anything about handicapped or the FHA or rights, did she know that these units that she was then canceling summarily were for disabled persons? Well, her manager, Falwell, was the salesperson she was dealing with who certainly knew, because that was the whole thing from the premise. But the person who's canceling this transaction, the causal one is Tellez de Souza. She makes the decision that she's done. Right. So we know the salesperson did, and we know that there were e-mails between them beforehand, before the 4th. And I know that there was e-mails from Mindy. I don't know. In my brief, it says exactly what was said by who. So I know it came up with them on the 4th. It comes up later. I didn't see anywhere in the exchanges with Tellez de Souza, leading up to Tellez de Souza's pulling the plug. I didn't see any reference to FHA protected activity disabled. It's just on the morning of the 4th. I know it's in there. Or right away it comes up. Exactly, right away. But she's burned the bridge at that point, Tellez de Souza. And so does that create a problem for you in terms of causation on a retaliation claim? Well, I mean, is it imputed from the salesperson? For months they've been doing this to put handicapped people in, because a defendant was also Falwell in this case. I know, but then she goes up the chain, and the fellow at the next level, I don't remember his name, he basically says, oh, well the salespeople get their commissions based on the customer rating, and so we give them a lot of discretion to pull the plug. And so he basically was just saying it was Tellez de Souza's call. Right. But yeah, so, well. But there's no taint in Tellez de Souza's decision, because she doesn't look like there's a triable issue that she did this based on anything retaliation. She just doesn't want to deal with difficult people. And she sees it.  I mean, she's still the employee. Clayton is the defendant we're talking about. She's Clayton's employee agent slash manager. Could I ask just maybe a basic question? I'm just completely missed. But CMH Homes just builds the homes. It's not in their own mobile park homes, right? It's a separate? Correct. They're a retailer. And then the home goes to a trailer park. So the theory here is they don't want, they just don't want to build a home for someone who's handicapped. I mean, there seems a stronger inference if it's in the community. Maybe they don't want that. So what the defendants, the various ones said in their depositions, and so buying a mobile home is not like buying a pair of shoes. It's like a long-term relationship, that they're servicing this home for at least a year afterwards. So that was the ostensible grounds that we do not want to deal with Mindy for this year afterwards. They just want out of the spin. Did that answer your question? Yes. Okay. So back to the, yes, I cannot tell you from this podium when the first handicapped to Katie, when it happened for her. But certainly the salesperson knew it beforehand. She knew it at the morning of the 4th. And for Clayton as the employer. You've gone over your time, but I have actually one question on the state law claim, which is, you know, about the delay from the asserted decision in October until the carrying out of the decision in December. And that this was somehow unfair and deprived her of the, nevermind. I'm sorry. We'll just. No, I'm sorry. All right. I'm mixing things up. It's been a long week. So, okay. All right.
judges: COLLINS, LEE, Fitzwater